UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSEMARY MAY OKERE, and )
A.O., a minor child, )
) Case No. C06-0292-RSL-JPD
      Petitioners, )
)
  v. ) REPORT AND RECOMMENDATION
)
ALBERTO R. GONZALES, *et al.*, )
)
      Respondents. )
_____ )

## I. INTRODUCTION AND SUMMARY CONCLUSION

On March 2, 2006, petitioners, through counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging the Board of Immigration Appeals' ("BIA") March 22, 2004, summary dismissal of their appeal for failing to file an appeal brief. (Dkt. #1). Petitioners argue that an appeal brief was actually filed and that their procedural and substantive due process rights have been violated by the BIA's erroneous decision. Petitioners also challenge the continued detention of petitioner Rosemary Okere, arguing that her detention without bond violates her right to procedural and substantive due process. (Dkt. #1 at 14). On April 10, 2006, respondents filed a Return and Status Report, arguing that the Court lacks subject matter jurisdiction to hear this case under the Real ID Act of 2005. (Dkt. #13).

Having carefully reviewed the entire record, I recommend that petitioners' habeas petition (Dkt. #1) be DENIED.

## II.  BACKGROUND AND PROCEDURAL HISTORY

Petitioners Rosemary May Okere and A.O., a minor child, are natives and citizens of Nigeria. (Dkt. #1 at 7; Dkt. #15 at R108, L518). On May 8, 1995, petitioners were admitted to the United States at Seattle, Washington, as B-2 visitors with authorization to remain in the United States until December 7, 1995. On March 15, 1996, petitioners filed an application for asylum. (Dkt. #15 at R1-10). On October 31, 2000, an asylum officer conducted an interview of Ms. Okere in Houston, Texas. (Dkt. #15 at L23-24). The asylum officer determined that Ms. Okere was not eligible for asylum status and referred the case to an Immigration Judge ("IJ"). *Id.*

On November 1, 2000, the former Immigration and Naturalization Service ("INS") issued a Notice to Appear, placing petitioners in removal proceedings and charging petitioners with remaining in the United States longer than permitted under Section 237(a)(1)(b) of the Immigration and Nationality Act ("INA"). (Dkt. #15 at L428-29). At a master calendar proceeding on January 29, 2001, petitioners, through counsel, admitted the factual allegations contained in the Notice to Appear and conceded removability, but requested relief from removal in the form of asylum, withholding of removal, and withholding of removal under the Convention Against Torture ("CAT"). (Dkt. #15 at L428). On October 8, 2002, the IJ denied petitioners' request for relief from removal, and ordered petitioners removed from the United States to Nigeria based on the charges contained in the Notice to Appear. (Dkt. #15 at L393-429). On October 25, 2002, petitioners appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (Dkt. #15 at L1004-1006, L629).

On January 26, 2003, Ms. Okere married Shune Arnold, a United States citizen. On March 11, 2003, Stephen Martin appeared as the attorney of record for Ms. Okere. (Dkt. #15 at L540-41). On March 17, 2003, petitioners filed a motion with the BIA to reopen and

remand petitioners' removal proceedings to the Immigration Court so that they could apply for adjustment of status based on Ms. Okere's marriage to a U.S. citizen, who had filed relative immigrant visa petitions with the Bureau of Citizenship and Immigration Services ("BCIS") on petitioners' behalf. (Dkt. #15 at L880-81, L619). The BCIS subsequently approved petitioners' relative immigrant visa petitions on October 3, 2003. (Dkt. #15 at L1135).[1]

On March 25, 2003, the BIA issued a briefing schedule, indicating that petitioners' appeal brief must be received no later than April 15, 2003. (Dkt. #15 at L629). On April 8, 2003, petitioners' counsel, Stephen Martin, filed a request for extension of briefing time. (Dkt. #15 at L631). The BIA granted petitioners an extension of the original briefing deadline, indicating that petitioners' appeal brief must be received no later than May 6, 2003. (Dkt. #15 at L634-35). On or about July 30, 2003, petitioners' counsel submitted petitioners' appeal brief to the BIA accompanied by a motion for consideration of the late filed brief. (Dkt. #15 at L642-651).

On March 22, 2004, the BIA summarily dismissed petitioners' appeal of the IJ's removal order for failing to file a timely appeal brief. (Dkt. #15 at L880-81). In addition, the BIA denied petitioners' motion to reopen and remand proceedings, finding that Ms. Okere had failed to provide sufficient evidence of the bona fides of her marriage. *Id*. On May 20, 2004, however, the BIA reopened the proceedings and remanded the case to the IJ for consideration of Ms. Okere's application for adjustment of status. (Dkt. #15 at L735).

On June 7, 2004, petitioners filed a motion to change venue from Dallas, Texas to Seattle, Washington. On June 21, 2004, the IJ denied petitioners' motion for change of venue.

---

[1] On February 23, 2004, Mr. Arnold, filed a Petition for Dissolution of Marriage in the Superior Court of Washington for Pierce County. (Dkt. #15 at L1187-1196). On October 5, 2005, DHS received a letter from Mr. Arnold, claiming that his marriage to Ms. Okere was a "fake" for "Immigration only," and that he wanted to withdraw his I-130 relative immigrant visa petitions. (Dkt. #15 at L1033). Mr. Arnold indicated that he had moved to California after filing the Petition for Dissolution of Marriage and never completed the dissolution. (Dkt. #15 at L1033).

(Dkt. #15 at L1132-34).  On June 28, 2004, petitioners failed to appear for their scheduled hearing and the IJ entered an *in absentia* order for petitioners removal from the United States to Nigeria.[2] (Dkt. #15 at L777, L775).  Petitioners appealed the IJ's decision to the BIA.  On March 10, 2005, the BIA affirmed the IJ's decision and dismissed petitioners' appeal.  (Dkt. #15 at L819).

On June 7, 2005, Ms. Okere filed, *pro se*, a motion to reopen and reconsider the BIA's decision dated March 10, 2005, based on the ineffective assistance of her former counsel, Stephen Martin.  (Dkt. #15 at L839-842).  Petitioner alleged that she was unaware that the initial appeal to the BIA was dismissed for failure to file an appeal brief, and was unaware of the June 28, 2004, immigration hearing until she arrived at Mr. Martin's office on the morning of the hearing.  Petitioner further alleged that she had filed a grievance with the Washington State Bar Association against Mr. Martin.  *Id.*  On August 1, 2005, the BIA denied petitioners' motion to reopen and reconsider as untimely.  (Dkt. #15 at L861).

On August 29, 2005, the Department of Homeland Security ("DHS") issued a "bag and baggage" order (surrender notice), directing Ms. Okere to report for removal to Nigeria on September 28, 2005.  (Dkt. #15 at R86).  On September 7, 2005, Ms. Okere filed an Application for Stay of Removal, stating that she had filed a Petition for Review in the Fifth Circuit Court of Appeals.  (Dkt. #15 at R85).  On September 28, 2005, petitioners reported for removal and Ms. Okere was taken into immigration custody and A.O. was released to Ms.

---

[2]The IJ's decision provides as follows:

> At a prior hearing the respondent admitted the factual allegations in the Notice to Appear and conceded removability.  I find removability established as charged. . . .  I further find that the respondent's failure to appear and proceed with any applications for relief from removal constitutes an abandonment of any pending applications and any applications the respondent may have been eligible to file.

(Dkt. #15 at L777, L775).

REPORT AND RECOMMENDATION
PAGE - 4

Okere's sister under an Order of Supervision. (Dkt. #15 at R95-96, R43, R109). The Field Office Director granted Ms. Okere a stay of removal until October 13, 2005. (Dkt. #15 at R120).

On October 4, 2005, petitioners, through counsel, filed a "Petition for Review (Habeas Corpus)" in the Ninth Circuit Court of Appeals in which Ms. Okere requested temporary release from custody and asked the court to vacate the BIA's decision. (Dkt. #15 at L1012-1032). On October 7, 2005, the Ninth Circuit issued a temporary stay of petitioners' removal pending review of petitioners' Petition for Review. (Dkt. #15 at R120). On November 8, 2005, the Fifth Circuit dismissed petitioners' Petition for Review for lack of jurisdiction. (Dkt. #15 at R127). On February 24, 2006, the Ninth Circuit dismissed petitioners' "Petition for Review (Habeas Corpus)" for lack of jurisdiction, finding that proper venue was in the Fifth Circuit because petitioners' removal proceedings were held before the Immigration Court in Dallas, Texas. (Dkt. #15 at L1234-35).

On February 28, 2006, U.S. Immigration and Customs Enforcement ("ICE"), not yet in receipt of the Ninth Circuit's order, completed a custody review of petitioners' case. (Dkt. #15 at R113-125). ICE concluded that Ms. Okere should remain in custody pending the result of her appeal before the Ninth Circuit.

On March 2, 2006, petitioners filed the instant habeas petition. (Dkt. #1). At the same time, petitioners also filed a Motion for Stay of Removal Pendente Lite. (Dkt. #2). Although petitioners filed a motion for stay of removal, petitioners actually sought Ms. Okere's release from custody pending adjudication of their habeas petition. Accordingly, the Court construed petitioners' motion for stay of removal as a motion for release pendente lite. On March 31, 2006, the Court denied petitioners' motion for release, finding that petitioners failed to provide sufficient evidence to meet the high standard for release. (Dkt. #12). Respondents filed a Return and Status Report on April 10, 2006. (Dkt. #13). Petitioners filed a response on May 3, 2006. (Dkt. #16). The habeas petition is now ready for review.

REPORT AND RECOMMENDATION
PAGE - 5

## III. DISCUSSION

### A. Jurisdiction

Petitioners challenge the BIA's March 22, 2004, summary dismissal of their appeal for failing to file an appeal brief. Petitioners asks this Court to vacate the BIA's order, asserting that there is evidence that an appeal brief was filed and that their procedural and substantive due process rights have been violated by the BIA's erroneous decision. (Dkt. #1). Respondents argue that this Court lacks jurisdiction to hear petitioners' habeas petition. (Dkt. #13).

Judicial review of a removal order is governed by 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005. Pub. L. No. 109-13, 119 Stat. 231 (codified at 8 U.S.C. § 1252). This statutory provision provides, in part, that the exclusive means of asserting a challenge to a final order of removal and matters dependent thereon, such as the one challenged herein, is to file a Petition for Review with the appropriate court of appeals, which in this case is the Fifth Circuit Court of Appeals. 8 U.S.C. § 1252 (b)(2); (a)(5)("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter"). Accordingly, claims by petitioners in which they challenge the BIA's summary dismissal of their appeal — a final order of removal — may not be considered in this habeas corpus action. Nonetheless, petitioners' separate claim that Ms. Okere is entitled to release from detention is properly before the district court on petition under 28 U.S.C. § 2241.

### B. Detention

Petitioners challenge the continued detention of Ms. Okere, arguing that her detention without bond "even after her Grievance with the Washington State Bar Association Office of Disciplinary Counsel resulted in her former counsel being place on diversion ('probation')" violates her right to procedural and substantive due process. (Dkt. #1 at 14). Respondents

REPORT AND RECOMMENDATION
PAGE - 6

01 contend that the "removal period" commenced upon the Ninth Circuit's final order, and,

02 therefore, Ms. Okere's detention is required under INA § 241(a)(2), 8 U.S.C. § 1231(a)(2).

03 (Dkt. #11 at 2-3). The Court agrees with respondents.

04       "When a final order of removal has been entered against an alien, the Government must

05 facilitate that alien's removal within a 90-day 'removal period.'" *Thai v. Ashcroft*, 366 F.3d

06 790, 793 (9th Cir. 2004)(citing *Xi v. INS*, 298 F.3d 832, 834-35 (9th Cir. 2002)); INA

07 § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, detention is

08 mandatory. INA § 241(a)(2), 8 U.S.C. § 1231(a)(2); *Khotesouvan v. Morones*, 386 F. 3d

09 1298, 1299-1300 (9th Cir. 2004). Where removal cannot be accomplished within the 90-day

10 removal period, detention beyond the removal period is authorized by INA § 241(a)(6), 8

11 U.S.C. § 1231(a)(6). In *Zadvydas* the Supreme Court determined that, beyond those 90-days,

12 the government is entitled to a presumptively reasonable period of detention of six months to

13 bring about the alien's removal from the United States. *Zadvydas v. Davis*, 533 U.S. 678,

14 701, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). After the six month period, the alien is

15 eligible for conditional release upon demonstrating that there is "no significant likelihood of

16 removal in the reasonably foreseeable future." *Id.*

17       In the present case, the Ninth Circuit dismissed petitioners' petition for review on

18 February 24, 2006, thereby commencing the 90-day "removal period." *See* INA §

19 241(a)(1)(B)(ii), 8 U.S.C. § 1231(a)(1)(B)(ii).[3] Accordingly, petitioner is within the 90-day

---

[3]Section 241(a)(1)(B) provides:

The <u>removal period</u> begins on the latest of the following:

    (i) The date the order of removal becomes administratively final.

    (ii) <u>If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.</u>

    (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention

REPORT AND RECOMMENDATION
PAGE - 7

removal period, during which time her detention is mandatory.  As petitioner has failed to demonstrate that she is entitled to release from detention, the Court must deny habeas relief.

### IV.  CONCLUSION

For the foregoing reasons, I recommend that petitioners' habeas petition be denied, and that the action be dismissed.  A proposed Order accompanies this Report and Recommendation.

DATED this 22nd day of May, 2006.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

---

or confinement.

8 U.S.C. § 1231(a)(1)(B)(emphasis added).